

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WHITNEY SPICHER,<br><br>               Spicher,<br><br>      v.<br><br>AMERICAN FAMILY MUTUAL INSURANCE COMPANY, S.I. and JOHN and JANE DOES 1-10,<br><br>               Defendants. | CASE NO. C22-1116 MJP<br><br>ORDER ON CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT |

This matter comes before the Court on Plaintiff Whitney Spicher's Motion for Partial Summary Judgment (Dkt. No. 52) and Defendant American Family Mutual Insurance Company, S.I.'s (AmFam) Motion for Partial Summary Judgment (Dkt. No. 50). Having reviewed the Motions, the Responses (Dkt. Nos. 61, 63), the Replies (Dkt. Nos. 65, 66), and all supporting materials, the Court DENIES Plaintiff's Motion and DENIES in part and GRANTS in part Defendant's Motions.

| | |
|---|---|
| 1 | **BACKGROUND** |

On March 23, 2019, Spicher suffered injuries to her back, neck, and shoulder when her vehicle and horse trailer were struck by an uninsured motorist. (Declaration of Michael Kittleson Ex. B (Dkt. No. 52-3).) In May 2021, Spicher submitted a claim for benefits to her insurer, AmFam, seeking underinsured motorist (UIM) benefits under her AmFam policy. (Id. Exs. A & B.) Spicher sought at least $41,285 for medical bills incurred after the collision, and identified the need for further medical care post-collision. (Id. Ex. B.) In February 2022, AmFam offered $19,500 to settle her claim, which included $7,762.50 for medical specials (offset by $5,000), $1,665 in attorney's fees, and general damages of $15,072.50. (Id. Ex. C.) AmFam made its offer based on its independent medical examination. (Declaration of Lauren Fugere Ex. 9 (Dkt. No. 51-2).) Spicher did not respond to the offer until June 2022, when she sent a notice to AmFam of what she believed to be violations of the Washington Insurance Fair Conduct Act (IFCA) stemming from AmFam's handling of her claim for UIM benefits. (Fugere Decl. Ex. 12.) Spicher then filed suit on July 11, 2022 in King County Superior Court, and AmFam removed the case to this Court. (Notice of Removal (Dkt. No. 1); Complaint (Dkt. No. 1-2).)

Spicher pursues claims for: (1) breach of contract for the failure to pay UIM benefits; (2) violations of the Washington Consumer Protection Act; (3) bad faith; (4) negligence; and (5) violations of IFCA. (See Complaint ¶¶ 5.1-9.4.) The first claim is contractual in nature, while the remaining claims are extracontractual.

Spicher seeks partial summary judgment on her IFCA claim, arguing that AmFam violated IFCA by failing to remit the $19,500 it offered to settle the claim. AmFam seeks summary judgment on the extracontractual claims, arguing that it never breached its duties under the insurance policy and acted reasonably.

| | |
|---|---|
| 1 | **ANALYSIS** |
| 2 | **A.    Summary Judgment Standard** |

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. Id. at 248. The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. Anderson, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." Celotex, 477 U.S. at 323-24.

**B.    Spicher's Motion for Partial Summary Judgment**

Spicher seeks summary judgment on her claim that AmFam violated IFCA by failing to remit the $19,500 it offered to settle the UIM claim. The record before the Court precludes summary judgment.

Spicher's argument relies exclusively on the unpublished portion of a Court of Appeals' decision: Beasley v. GEICO Ins. Co., 23 Wn. App. 2d 641 (Div. 2 2022). In Beasley, the insurer offered $10,000 to settle a UIM claim. Id. at 644. The plaintiff rejected the adequacy of the offer, but still demanded the insurer pay the offered amount. Id. The insurer refused to pay even though

1  its witnesses conceded that the $10,000 offer reflected undisputed UIM benefits owed that

2  should have been paid promptly. Id. at 645-47. The trial court granted the plaintiff's Rule 50

3  motion and directed the jury to accept that GEICO's failure to pay the $10,000 constituted an

4  unreasonable denial of the payment of benefits under IFCA. Id. 648. In an unpublished portion of

5  the appeal, the Court of Appeals concluded that "under the specific facts of this case," the trial

6  court did not err in concluding that the failure to pay the demanded $10,000 was an unreasonable

7  denial of the payment of benefits under IFCA because the plaintiff demanded the payment of

8  what the defendant conceded was due and owing as UIM benefits. Id. at 671 The Court

9  specifically noted that "[a]lthough an insurer is not always obligated to pay an offer that is not

10 accepted by the insured, the evidence here clearly shows that GEICO did not dispute that

11 Beasley was entitled to receive the $10,000 before any final settlement."

12      The Court is not convinced that Beasley compels entry of summary judgment in

13 Spicher's favor on the record presented.

14      First, Beasley does not draw a bright-line rule that the failure to remit payment of an

15 amount proposed to settle a UIM claim will always violate IFCA. The Court expressly noted that

16 an "an insurer is not always obligated to pay an offer that is not accepted by the insured."

17 Beasley, 23 Wn. App. 2d at 671. The Court noted the unique nature of the record before it,

18 particularly the fact that the plaintiff had demanded payment of the amount the insurer agreed

19 was due as UIM benefits. Id. Moreover, the portion of Beasley on which Spicher relies is

20 unpublished and therefore not precedential.

21      Second, the facts Spicher has presented do not align with those in Beasley. Notably,

22 Spicher cannot point to any admissions from AmFam's witnesses that the settlement offer

23 reflected an undisputed amount owed under the policy. Spicher points to testimony from Kristen

24

Johnson, the adjuster, but she did not confirm whether the amount was undisputedly owed—just that it was offered to settle the claim. (See Pl. Mot. at 2 (citing the Deposition of Kristen Johnson at 72-73).) Spicher tries to paper over this evidentiary gap by suggesting that Johnson just didn't "say the magic words 'undisputed benefits.'" (Reply at 2-3.) But it would be improper to construe Johnson's testimony in the way Spicher requests, particularly when Rule 56 requires the Court to construe the facts in AmFam's favor. The only other evidence Spicher cites similarly fails to meet the mark. Spicher inaccurately cites to AmFam's Rule 30(b)(6) witness as having "testified that this offer represented what Ms. Johnson felt and believed 'was an appropriate amount of noneconomic or general damages.'" (Reply at 3 (citing Deposition of AmFam Rule 30(b)(6) witness at 16:11-21).) The testimony in full is:

> Q: Understood. We talked about it a little bit, but can you take me through American Family's policies and procedures on calculating general damages in a UM claim, so things like pain and suffering?
> A: Sure. So an adjuster such as Ms. Johnson will look at the totality of the information available to her at the time of the evaluation, or evaluations, as sometimes more than one is performed on an individual claim, and assess what they feel and believe is an appropriate amount of noneconomic or general damages.

(Rule 30(b)(6) dep. at 16.) This testimony remains generalized and does not speak to the specifics of this case or whether Johnson actually followed these policies or procedures. These two deposition excerpts—the sole evidence on which Spicher relies—fail to provide a sufficient parallel to Beasley that might support summary judgment because there remains a dispute of fact as to whether the settlement offer reflects an undisputed amount owed as UIM benefits. Based on this record, the Court finds that entry of summary judgment is improper on Spicher's IFCA claim and DENIES her Motion.

C. **AmFam's Motion for Summary Judgment**

AmFam seeks summary judgment on all of Spicher's extracontractual claims—her IFCA, bad faith, and CPA claims. The Court reviews the arguments as to each claim and DENIES the Motion as to the IFCA and bad faith claim, but GRANTS the Motion as to the CPA claim.

1. **IFCA**

AmFam seeks summary judgment on Spicher's IFCA claim and all other extracontractual claims on the theory that she has failed to identify an unreasonable denial of coverage. (Mot. at 7-9.) This argument misses the mark.

AmFam's Motion relies on a misrepresentation of the elements of an IFCA claim, and the Supreme Court's decision in Perez-Crisantos v. State Farm Fire & Cas. Co., 187 Wn.2d 669 (2017). AmFam argues that "a claim cannot be brought under IFCA based on claims handling, unless there has been an actual denial of coverage." (Mot. at 8 (citing Perez-Crisantos, 187 Wn.2d 669).) This is an incorrect statement of law. Under IFCA, "[a]ny first party claimant to a policy of insurance who is unreasonably denied a claim for coverage or payment of benefits by an insurer may bring an action in the superior court of this state to recover the actual damages sustained, together with the costs of the action, including reasonable attorneys' fees and litigation costs[.]" RCW 48.30.015. Contrary to AmFam's Motion, an IFCA claim can be brought if there is either an unreasonable denial of coverage or an unreasonable denial of the payment of benefits. Nothing in Perez-Crisantos, changes this fact. In Perez-Crisantos, the Supreme Court only "conclude[d] that IFCA does not create an independent cause of action for regulatory violations" and that a plaintiff would also need to show an unreasonable denial of coverage or unreasonable denial of the payment of benefits. Perez-Crisantos, 187 Wn.2d at 684. It did not limit IFCA claims to situations involving a denial of coverage, as AmFam incorrectly argues.

Applying the proper IFCA standard, the Court finds that summary judgment is improper on the record before it where the Parties dispute whether or not AmFam made an unreasonable denial of benefit payments. Whether AmFam's failure to pay UIM benefits was reasonable or not requires the weighing of competing evidence and testimony concerning the basis of the offer, the medical examination, AmFam's claim handling process, and dueling experts. "Reasonableness" can rarely be resolved at summary judgment, and the record here contains conflicting evidence as to reasonableness. And although Spicher has shown evidence of damages caused by the alleged IFCA violations, the Court cannot determine the amount on summary judgment. The disputed material facts compel denial of AmFam's summary judgment motion.

Additionally, AmFam has not advanced any reason why Perez-Crisantos would require dismissal of Spicher's non-IFCA claims as it argues in its Motion. (Mot. at 7-9.) The key portion of Perez-Crisantos on which AmFam relies is limited to IFCA, and AmFam advances no contrary argument. And to the extent the plaintiff in Perez-Crisantos also pursued a CPA claim, the Supreme Court held that summary judgment was proper because there was no "genuine issue that State Farm acted unreasonably" or violated a claims-handling regulation. The Court nowhere announced a rule that a CPA claim also required evidence of an unreasonable denial of coverage.

The Court DENIES the Motion as to Spicher's IFCA claim.

**2.     Bad Faith**

AmFam also seeks summary judgment on Spicher's bad faith claim on the theory that it acted reasonably in assessing the UIM claim. The Court finds no basis to grant this portion of the Motion.

"To succeed on a bad faith claim, the policyholder must show the insurer's breach of the insurance contract was unreasonable, frivolous, or unfounded." Smith v. Safeco Ins. Co., 150 Wash. 2d 478, 484 (2003), As AmFam conceded, "[w]hether an insurer acted in bad faith is a question of fact." (Mot. at 13 (citing Am. States Ins. Co. v. Symes of Silverdale, Inc., 150 Wn.2d 462, 470, 78 P.3d 1266 (2003)).)

As with Spicher's IFCA claim, the Court cannot resolve the bad faith claim at summary judgment because the Parties have presented contrasting and competing evidence as to whether AmFam acted reasonably or not. To rule in AmFam's favor would require the Court to ignore Spicher's expert's opinions and weigh the evidence in AmFam's favor contrary to Rule 56. This would not be proper, and the Court finds that it cannot properly resolve this dispute of fact at summary judgment. The Court therefore DENIES the Motion as to the bad faith claim.

**3.     CPA**

AmFam seeks summary judgment on Spicher's CPA claim on the theory that she failed to show any evidence of an injury to business or property or causation. The Court agrees.

"To prevail in a private CPA claim, the plaintiff must prove (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation." Panag v. Farmers Ins. Co. of Wash., 166 Wn.2d 27, 37 (2009) (citing Hangman Ridge Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 784 (1986)). "The CPA is to be 'liberally construed that its beneficial purposes may be served.'" Panag, 166 Wn.2d at 37 (quoting RCW 19.86.920.)

"A loss of use of property which is causally related to an unfair or deceptive act or practice is sufficient injury to constitute the fourth element of a Consumer Protection Act violation." Mason v. Mortg. Am., Inc., 114 Wn.2d 842, 854 (1990). "The injury element will be

met if the consumer's property interest or money is diminished because of the unlawful conduct even if the expenses caused by the statutory violation are minimal." Id. "Monetary damages are not necessary to establish injury, a mere delay in use of property or receiving payment is an injury under the CPA." Folweiler Chiropractic, PS v. Am. Fam. Ins. Co., 5 Wn. App. 2d 829, 839 (2018) (citation and quotation omitted). Attorneys' fees incurred in bringing a CPA claim do not qualify as a compensable injury, but expenses incurred to investigate a CPA claim can if they are "beyond the expenses of litigating her personal injury claim." Panag, 166 Wn.2d at 62-65. Monetary damages are not necessary, as "nonquantifiable injuries, such as loss of goodwill" may suffice. Nordstrom, Inc. v. Tampourlos, 107 Wn.2d 735, 740 (1987).

Spicher has not identified an injury traceable to the claimed CPA violations. Spicher claims that she incurred some investigative costs in advance of litigation. But all of the investigative work she has identified that was performed by counsel was done in anticipation of litigation, which is not compensable. See Panag, 166 Wn.2d at 62-65. Spicher also argues that she incurred the costs of retaining experts that are compensable CPA damages. But, again, those are costs incurred as part of litigation and are not recoverable. See id. Spicher identifies no other compensable injury to property or business.

The Court GRANTS the Motion as to the CPA claim and enters summary judgment in AmFam's favor on this claim.

## CONCLUSION

Except as to Spicher's CPA claim, the Parties have failed to identify any basis on which to grant summary judgment. Genuine issues of material fact remain hotly disputed as to each claim, except the CPA claim, given the absence of a compensable injury. The Court therefore

DENIES Plaintiff's Motion and DENIES in part and GRANTS in part Defendant's Motion. The Court GRANTS summary judgment in Defendant's favor on Spicher's CPA claim.

The clerk is ordered to provide copies of this order to all counsel.

Dated August 31, 2023.

Marsha J. Pechman
United States Senior District Judge